AARON STEPHENS v. THE STATE.

1. STATEMENT OF FACTS — PRACTICE.— The trial judge at any time during the term of court, whilst in control of the record, is authorized, upon a proper representation that an error of omission or commission appears in the statement of facts, to correct the same according to the truth of the matter.

2. SAME.— After the statement has been agreed to, certified and filed, such correction should never be made except in most palpable cases of error, or upon the most satisfactory proof of the same. See the opinion for an instance wherein the court did not err in making the addenda complained of.

3. CHARGE OF THE COURT — WEIGHT OF EVIDENCE.— A charge of the court that in effect instructs the jury that they must not look to other evidence in the case if they believe the testimony of a witness to certain confessions of the defendant, is erroneous as being directly upon the weight of evidence. See the opinion in extenso on the subject.

APPEAL from the District Court of Anderson. Tried below before the Hon. P. F. EDWARDS.

The indictment charged the theft, on the 22d day of November, 1879, in Anderson county, of one hundred and thirty dollars in bills of various denominations, current money of the United States, the property of J. S. Sandifer. Upon his trial the defendant was found guilty by the jury, and the punishment assessed was a four years' term in the penitentiary.

The substance of the testimony was that the defendant was employed by Sandifer to assist him repair a privy on the latter's premises. When the two commenced work, Sandifer hung his coat, in the pocket of which was his pocket-book containing the money alleged to have been stolen, on a plank some three or four feet distant from the privy. The defendant worked on that side of the privy and near the coat, and Sandifer worked on the opposite side, and while at work could not see the defendant. At one time while at work, Sandifer went a short

distance from the privy to get a plank. The two were at work some fifteen or twenty minutes, and the defendant left the privy between one and five minutes before Sandifer quit work and went in to dinner. Sandifer did not notice the direction in which the defendant went.

Within five minutes after entering the house Sandifer remembered having left his coat where he hung it, and returned for it, and found his coat where he had hung it, but the pocket-book and money were missing. He found, on the ground under his coat, a paper that he had left in his coat pocket. The witness, Sandifer, when he returned for his coat saw a negro woman pass through the back gate of his yard, with a bucket of water, going to a negro-house some thirty feet distant, and passing within ten feet of where the coat was hanging; but she did not stop. The privy stood in an open lot through which persons were in the habit of passing in going to and from dinner, but he saw no one pass when himself and defendant were at work or between the time defendant left and he returned for his coat and money.

William Barbour testified substantially that, a short time after the theft of the money, Sandifer told him who he suspected, and proposed to witness to pay him $25 if he would put him on the track of its recovery. Some two or three weeks after this conversation with Sandifer, defendant handed witness a twenty-dollar bill and asked him to get it changed. Witness took the money into a neighboring store and purchased twenty-five cents worth of tobacco, receiving $19.75 in change. The defendant then instructed witness to give the change to Ann Godfy, to keep for him. The witness remarked to the defendant, "You seem to be rising," and defendant answered, "People say I am building houses and buying land with Sandifer's money." Witness asked, "Do they?" and defendant replied, "Yes, but they can't prove any-thing, and besides they can't hurt me any how; I didn't

take it out of the pocket, but picked it up off of the ground under the coat." Witness asked, "Where is the pocket-book?" and he replied, "Oh! that's gone to h—l long ago, and that will never be a witness against me."

Subsequent to the defendant's first arrest and discharge, the witness, according to his testimony, had another conversation with defendant, during the course of which the defendant said to him that Sandifer had visited him in jail during his confinement, and, telling him that he knew some of the money had been spent, proposed to defendant that if he would return $75, he would be satisfied. Defendant then asked witness if he thought Sandifer would have carried out the proposition. The witness replied in the affirmative, and defendant said, "By G—d, I was afraid to trust him." The defendant was not under arrest when this conversation occurred.

The character of this last witness, and his reputation in the community for truth and veracity, were assailed by two or three witnesses. It is to his evidence the charge relates upon which the conviction is reversed. The remaining testimony is not essential to an understanding of the case.

*Gammage & Gregg*, for the appellant, on the charge of the court, cite 43 Texas, 1; 41 Texas, 619; 41 Texas, 23; 25 Texas Sup. 342; 42 Texas, 360; 1 Texas Ct. App. 440.

*Horace Chilton*, Assistant Attorney General, for the State.

White, P. J. The bill of exceptions shows that after the statement of facts in the case had been agreed to by the counsel, approved and certified by the judge, and filed by the clerk, on the verbal motion of the prosecuting officer, the judge added to the statement by interlineation a certain omitted statement of one of the witnesses with regard to the value of the money. This

was done over objections of defendant's counsel, but the bill of exceptions does not show that the objection was that no such testimony was adduced; on the contrary, the fact that there was such evidence, if not conceded, is not controverted by the bill, and the objection seems to have been urged solely to the right and authority of the judge to change the statement of facts, after it was filed as part of the record, under the circumstances detailed.

Before his approval, the rule is well settled, that the judge may amend, add to or correct the statement submitted to him, so as to make it speak the truth fully, with regard to the facts proven. *King* v. *Russell*, 40 Texas, 124; *Courtney* v. *The State*, 3 Texas Ct. App. 258. And in *Deggs* v. *The State*, 7 Texas Ct. App. 359, it is said: "A purpose of the law in requiring that the statement of facts should be approved by the judge, was to enable that officer to supply omissions which had been made by counsel, either through accident or design, and which were essential to a proper presentation of the case on appeal." In this view of the object and purpose of the law, it occurs to us that the court could at any time during the term, and whilst it had control of the record, upon a proper representation that an error of omission or commission had been committed in preparing the statement, correct the same according to the truth of the matter. But after the statement has been agreed to, certified and filed, such correction should never be made except in most palpable cases of error, or upon the most satisfactory proof of the same. In this instance, as before stated, there seems to be no question with regard to the fact of the correctness of the judge's statement and addenda, so far as it purported to give the omitted testimony. We cannot see how the action can be held erroneous.

Serious objection and complaint is made to that portion of the charge to the jury contained in the following language, viz.: "The confessions of the defendant are in

evidence before you, and if in your best judgment you shall give no credit to the witness who professed to detail them, you will then look to the other testimony in the case, and apply to it the rules relating to circumstantial testimony. If you give credence to the witness who professed to detail the confessions, you need not apply to the evidence those rules as to circumstantial testimony."

This charge, it occurs to us, was directly upon the weight of the testimony. It was in effect, if not in fact, tantamount to telling the jury "if you believe the testimony of the witness who has testified to defendant's confessions, then you will not look to or consider the other evidence in the case." This was, in the contingency mentioned, depriving the defendant of the benefit of any testimony offered by him, by requiring the jury not to look to or consider it. A charge in every respect similar was given in the case of *Rice* v. *The State*, 3 Texas Ct. App. 451 and upon consideration of which the same was declared erroneous, the court holding that "it is not the province of the judge to say to the jury on what evidence they should convict. The jury are the exclusive judges of the facts proved and of the weight of the testimony; and a charge to the jury is not unexceptionable if it expresses or intimates any opinion on the weight of evidence, or the credibility of statements made by the accused or the witnesses." [Citing *Ross* v. *The State*, 29 Texas, 499; *Jones* v. *The State*, 13 Texas, 175; *Butler* v. *The State*, 3 Texas Ct. App. 48.] See also *Lunsford* v. *The State*, 9 Texas Ct. App. 217.

Because the charge of the court was upon the weight of evidence in the particular pointed out, the judgment rendered below is reversed and the cause remanded for a new trial.

*Reversed and remanded.*